**FIMSA, INC., Plaintiff,**

v.

**UNICORP FINANCIAL CORPORATION
and Marvin Rosenblum, Defendants.**

**No. 89 C 6520.**

United States District Court,
N.D. Illinois, E.D.

March 7, 1991.

David S. Heller, Bruce Amon James, Daniel J. Taub, Goldberg, Kohn, Bell, Black, Rosenbloom & Moritz, Ltd., Chicago, Ill., for plaintiff.

Daniel A. Zimmerman, New York City, Joseph A. Lamendella, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

FIMSA, Inc. ("FIMSA") has sued Unicorp Financial Corporation ("Unicorp") and Marvin Rosenblum ("Rosenblum") to recover on guaranties executed by both defendants. On June 5, 1990 this Court issued the "Opinion" denying FIMSA's first motion for summary judgment on the grounds that defendants had amended their answer to add two affirmative defenses: tortious

interference and mutual mistake.[1] At page 5 of its findings of fact ("Findings") and conclusions of law ("Conclusions") in the Opinion, entered pursuant to Fed.R.Civ.P. ("Rule") 56(d) on denial of FIMSA's motion, this Court concluded (footnote omitted):

> Absent a determination by this Court (a) that the new defense asserted in the Amended Answer filed by Unicorp and Rosenblum is meritorious or (b) that Unicorp and Rosenblum have established that a mutual mistake caused the omission from their respective guaranties of a provision [granting each of them an 18–month grace period], Unicorp and Rosenblum are jointly and severally liable to FIMSA in the sum of $2.5 million plus interest, costs, expenses and reasonable attorneys' fees paid or incurred by FIMSA in attempting to collect and enforce any indebtedness covered by or related to the Unicorp Guaranty or the Rosenblum Guaranty, respectively.

Since the Opinion was issued, defendants have moved under Rule 15(a) for leave to amend their answer to assert the following additional defenses (each of the following quotations is from defendants' response to Count II in their Second Amended Answer):

> 1. that on account of FIMSA's lack of a certificate to do business in Illinois, "Plaintiff is barred from bringing suit in the courts of Illinois until it obtains a certificate of authority" (Third Affirmative Defense);
> 2. that "Plaintiff's public auction sale of Norcross' collateral was commercially unreasonable within the ambit of UCC § 9–504" (Fourth Affirmative Defense); and

> 3. that the "guarantees are void based on Plaintiff's misrepresentation" (Fifth Affirmative Defense)—a contention based on a purported failure of consideration.

FIMSA has now again moved under Rule 56 for summary judgment. For the reasons stated in this memorandum opinion and order, its motion is granted.

### Facts[2]

FIMSA is a Colorado corporation having its principal place of business in Colorado. Unicorp is a New Jersey corporation having its principal place of business in New Jersey, and Rosenblum too is a citizen of New Jersey. That complete diversity of citizenship, of course, establishes the requisite federal jurisdiction (far more than $50,000 is in controversy here).

On January 13, 1989 FIMSA (by the "Sale") sold to Norcross, Inc. ("Norcross") its interest along with the rights of Crystal Greetings, Inc. ("Crystal") in property owned by Crystal. In part the Norcross purchase price was represented by a $2.5 million secured installment note dated December 31, 1988 (the "Note"). Under the Note's terms quarterly interest payments of $50,000 each were due and payable on March 31, 1989 and June 29, 1989. Norcross failed to make both those interest payments. Thus it owes FIMSA under the Note the principal sum of $2.5 million plus interest, costs and attorneys' fees, all of which continue to accrue.[3]

■ To induce FIMSA to enter into the Sale, each of Unicorp and Rosenblum executed an unconditional guaranty repro-

---

**1.** Defendants have since abandoned their mutual mistake defense (D.Mem. 2). They also have a pending motion to disqualify FIMSA's counsel, but they have agreed by a December 21, 1990 stipulation to hold that motion in abeyance pending the outcome of the present motion.

**2.** Rule 56 principles impose on the movant the burden of establishing the lack of a genuine issue of material fact (*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986)). For that purpose this Court is called on to draw all "reasonable inferences, not every conceivable inference" in the light most favorable to the nonmovants—in this

case Unicorp and Rosenblum (*De Valk Lincoln Mercury, Inc. v. Ford Motor Co.*, 811 F.2d 326, 329 (7th Cir.1987)). Although they have cited incorrectly to the subparagraphs of this District Court's General Rule ("GR") 12(m) and 12(n) requiring factual statements in support of and in opposition to Rule 56 motions, both sides have tendered such statements (cited "P. 12(m) —" and "D. 12(n)—," respectively).

**3.** All the facts to this point were established in the Opinion's Findings 1–8. They have been restated by FIMSA in P. 12(m) ¶ 1 and have been admitted by defendants in D. 12(n) ¶ 1.

duced respectively as Amended Complaint Exs. C and D (individually "Unicorp Guaranty" and "Rosenblum Guaranty" and collectively "Guaranties"), each dated December 29, 1988.[4] Under the terms of those documents, each defendant guaranteed payment of (a) any and all then existing and future indebtedness of Norcross to FIMSA evidenced by the Note, (b) all interest on the indebtedness, (c) costs, (d) expenses and (e) reasonable attorneys' fees paid or incurred by FIMSA at any time in attempting to collect or enforce any indebtedness covered by or related to his or its Guaranty.

As an affirmative defense, defendants assert that FIMSA interfered with an oral settlement between Norcross and Fulfillment Center of America ("FCA"). FIMSA has responded (P. 12(m) ¶ 9) and has offered proof (P.Ex. J ¶ 11–12) that no such agreement existed during the time (September–October 1989).[5] But even if such an agreement had existed (something de-

fendants have not shown even in prima facie terms), FIMSA certainly had no knowledge of it, nor was it given notice of any such agreement.

### Basic Guaranty Principles

As already stated, the uncontested evidence shows that each defendant executed a guaranty that caused both to be obligated to FIMSA in an amount no greater than $2.5 million—plus attorneys' fees, costs, expenses and interest—if Norcross failed to make payments on the Note. Norcross did just that—it failed—so the literal terms of the Guaranties obligate each defendant to pay FIMSA the agreed-upon amount (subject of course to the natural prohibition against double recovery by FIMSA). To prevent that seemingly inevitable result, defendants have offered several affirmative defenses to FIMSA's lawsuit. But as the following discussion makes clear, those defenses have no merit and FIMSA must prevail.

4. Defendants assert that FIMSA's motion for summary judgment is supported by "unsworn, uncertified exhibits to a Memorandum of Law" (D.Mem. 19). To be sure, FIMSA's memorandum does not specifically include the Guaranties among its listed exhibits. But defendants' challenge at this point is nothing short of frivolous. FIMSA's *original* 12(m) ¶¶ 13 and 15 (on its first summary judgment motion) asserted defendants' execution of the Guaranties (Amended Complaint Exs. C and D), and defendants' original 12(n) ¶¶ 13 and 15 *admitted* both those assertions (an admission that remains binding on defendants and is expressly part of the grist for this Court's mill under Rule 56(c), which refers to "admissions on file"). To the same effect, here is what defendants said at pages 7–8 of their Memorandum opposing FIMSA's first summary judgment motion ("First D.Mem."):

> Unicorp and Rosenblum each executed the certain continuing unconditional guaranties which are attached Exhibits A [sic—should be C] and B [sic—should be D] respectively to the Amended Complaint (Amended Complaint, Count II and Count III) and to the date of this Memorandum, both Unicorp and Rosenblum each has failed to pay pursuant to each of the executed guaranties.

And as if that were not enough, defendants have repeated the selfsame admission on the *current* motion: P. 12(m) ¶ 1 expressly incorporates the Opinion's Findings by reference (that of course includes Findings 9 and 11, which expressly find defendants executed the Guaranties) and D. 12(n) ¶ 1 expressly admits those matters as un-

disputed. There is thus no question in the world that those documents are properly before this Court as evidence (see *Mourning v. Family Publications Service, Inc.,* 411 U.S. 356, 360, 93 S.Ct. 1652, 1656, 36 L.Ed.2d 318 (1973), approving the District Court's consideration of a letter the existence of which had been admitted by the other party), and it is frankly offensive for defendants to have suggested otherwise in their current briefing.

5. On October 10, 1989 Norcross filed a complaint (the "Pennsylvania Complaint," P.Ex.J.) in the Court of Common Pleas of Luzerne County, Pennsylvania, requesting in part that FCA be enjoined from conducting a warehouseman's lien sale. Pennsylvania Complaint ¶¶ 11–12 stated that FCA and Norcross failed to reach an agreement with FCA. D. 12(n) ¶ 9 denies FIMSA's statement that there was no contract, but defendants fail to offer any evidence that any such contract existed. D.Mem. 30 asserts that a October 1, 1987 contract (Rosenblum Dep.Ex.C) is perhaps the agreement with which FIMSA tortiously interfered. But Second Affirmative Defense ¶¶ 6–8 to Count II in the Second Amended Answer specifically states that the alleged interference aborted an *oral* settlement agreement between Norcross and FCA. Whether as a matter of judicial estoppel or simple failure of proof or otherwise, defendants' hopeless muddying of the waters defeats any contention on their part that any competent evidence presents a genuine issue of material fact on the issue.

■ Under Illinois law [6] defendants' Guaranties are contracts legally enforceable in accordance with their express provisions. *Citicorp Savings of Illinois v. Ascher*, 196 Ill.App.3d 570, 574, 143 Ill.Dec. 474, 476, 554 N.E.2d 409, 411 (1st Dist. 1990) (citations omitted) explains:

A guaranty must be construed as any other contract to determine the intent of the parties. Where the language is not ambiguous, it must be construed according to its terms.

*Bank of Benton v. LaBuwi*, 194 Ill.App.3d 489, 495, 141 Ill.Dec. 562, 566–67, 551 N.E.2d 749, 753–54 (5th Dist.1990) (citations omitted) echoes that description of Illinois law:

The rules of construction applicable to contracts generally also apply to contracts of guaranty, and if such a contract is unambiguous, it must be enforced as written. A guaranty contract which is unequivocal in its terms must be interpreted according to the language used, for it is presumed that the parties meant what their language clearly imports.

By their plain and unambiguous language, the Guaranties obligate Rosenblum and Unicorp to make good on an amount up to $2.5 million of unpaid debt from Norcross to FIMSA (plus interest, costs, expenses and reasonable attorneys' fees paid or incurred by FIMSA in attempting to collect and enforce any indebtedness covered by or related to the Guaranties). It is also uncontroverted that Norcross is in default. All that remains for consideration is whether any valid defense permits defendants to escape their liability on the Guaranties.

## Defendants' Claimed Defenses

As already stated, FIMSA's first summary judgment motion was defeated by defendants' advancement of two new defenses—mutual mistake and tortious interference—the first of which has now been abandoned. Just as they did before in the face of imminent doom, defendants have again now moved to add still other new defenses. That motion is denied, for those defenses (like those previously advanced) are not sustainable.[7]

■ That is so principally because defendants may not legally pursue *any* defenses to FIMSA's otherwise valid claim against them, for they have specifically waived any right to do so. Each Guaranty provides (Rosenblum Guaranty 4; Unicorp Guaranty 4):

The undersigned waives the filing of a claim with a court in the event of receivership or bankruptcy of the Debtor, and waives every defense, counterclaim or setoff which the undersigned may now have or hereafter may have to any action by FIMSA in enforcing this guaranty, including, without limitation, every defense counterclaim or setoff which the undersigned may now have, or hereafter may have, against the debtor or any other party liable to FIMSA in any manner.

---

**6.** Each Guaranty has a choice of law clause, which reads (Rosenblum Guaranty 5; Unicorp Guaranty 6):

This guaranty has been delivered at Chicago, Illinois, and shall be construed and the rights, remedies and liabilities of the parties shall be determined in accordance with the laws of the State of Illinois, in which State it shall be performed by the undersigned.

Illinois like other jurisdictions permits parties to agree to a choice of law, as *Hofeld v. Nationwide Life Insurance Co.*, 59 Ill.2d 522, 529, 322 N.E.2d 454, 458 (1975) (citation omitted) states:

Generally, the law applicable to a contract is that which the parties intended, assuming such an intent. When that intent is expressed, it should be followed.

Earlier defendants had said (First D.Mem. 8) that the Guaranties provide that Illinois law would apply, but in their current memorandum (D.Mem. 20–23)—without any mention of the choice of law clause—they assert that Pennsylvania law should apply to the affirmative defense of tortious interference. As explained below, Pennsylvania law does not dictate a different outcome for that claim.

**7.** *Verhein v. South Bend Lathe, Inc.*, 598 F.2d 1061, 1063 (7th Cir.1979) (per curiam) (citations omitted) *teaches:*

[S]uch a motion is always made to the sound discretion of the district court and the court may deny leave to amend where the proposed amendment fails to allege facts which would support a valid theory of liability, or where the party to amend has not shown that the proposed amendment has substantial merit.

Each Guaranty further contains this added express waiver (Rosenblum Guaranty 3; Unicorp Guaranty 3):

The undersigneds' liability hereunder shall in no way be affected, impaired, reduced or released by any of the following ..., namely:

(f) any act of commission or omission of any kind or at any time upon the part of FIMSA with respect to any matter whatsoever, other than the execution and delivery by FIMSA to the undersigned of an express written release or cancellation of this guaranty.

As this Court's opinion in *BA Mortgage and International Realty Corp. v. American National Bank and Trust Co. of Chicago,* 706 F.Supp. 1364, 1376 (N.D.Ill.1989) (citation omitted) explained as to the enforceability of such a waiver of defenses under Illinois law:

That principle applies with full vigor to waivers in a guaranty: When they are clear and unambiguous, Illinois courts consistently enforce them.

Even the "obligation to act in a commercially reasonable manner" can be waived by language in a guaranty *Lincoln Park Federal Savings & Loan Association v. Carrane,* 192 Ill.App.3d 188, 192–93, 139 Ill.Dec. 251, 254–55, 548 N.E.2d 636, 639–40 (1st Dist.1989).[8]

It is scarcely possible to imagine clearer language: Defendants have waived "every defense, counterclaim or setoff" (Rosenblum Guaranty 4; Unicorp Guaranty 4). And there is nothing to defendants' contention that their express waiver does not apply to such future occurrences as the alleged tortious interference—again that argument is defeated by specific language

in the Guaranties ("waives every defense, counterclaim or setoff which the undersigned may now have *or hereafter may have* "), and the cases consistently enforce such language to bar post-guaranty defenses as well. This Court therefore denies defendants' motion to add the new Third and Fourth Affirmative Defenses and finds that the earlier defense of tortious interference is unsustainable as well.

■ Even if this Court were inclined to recast the tortious interference defense (Second Affirmative Defense to Count II in the Amended Answer and Second Amended Answer) as a counterclaim,[9] FIMSA would still win. Before this opinion turns to an explanation of why that is so, note may be taken of defendants' suggestion that a different result might obtain if this Court were to consider the issue under Pennsylvania rather than Illinois law. In that respect, defendants offer no explanation as to why either the Guaranties' choice of law clause or their waiver of defenses and counterclaims should not apply. As the language quoted in the preceding paragraph reflects, all counterclaims as well as all defenses are within the express scope of the waiver.

But defendants' reference to Pennsylvania rather than to Illinois jurisprudence makes no difference anyway. Each state's law contains some common elements that defendants must satisfy to succeed with any tortious interference claim and as to which they must show some dispute of material fact to avoid summary judgment. Both Illinois and Pennsylvania law require a party claiming such tortious interference to prove the existence of the alleged contract and the other party's knowledge of

---

**8.** See also *Home Federal Bank for Savings v. Daly,* 1990 WL 251775, 1990 U.S.Dist. LEXIS 17132, at 9–12 (N.D.Ill.) (upholding under Illinois law a general waiver of defenses, including the obligation to act in a commercially reasonable manner). Nor need this Court be concerned about any possible jurisdictional (and hence nonwaivable) defenses—none of the matters asserted by defendants falls even arguably into the "jurisdictional" category other than FIMSA's asserted lack of a certificate to do business, and there too Illinois law treats that as a waivable defense, not as a jurisdictional defect (*Amerco Field Office v. Onoforio,* 22 Ill.App.3d

989, 993, 317 N.E.2d 596, 600 (2d Dist.1974)). As for the Fifth Affirmative Defense, which would seek to void the Guaranties themselves (hence voiding their waiver of defenses too), that will be dealt with a bit later.

**9.** Rule 8(c) states:

When a party has mistakenly designated a defense as a counterclaim or as a counterclaim as a defense, the court on terms, if justice so requires, shall treat the pleading as if there had been a proper designation.

such contract.[10] Absent at least a showing of a genuine issue of material fact as to the existence of both those elements, defendants cannot avoid summary judgment (*Celotex,* 477 U.S. at 322–323, 106 S.Ct. at 2552–53.)[11]

Defendants have failed to provide even a colorable factual showing that the agreement alleged in their tortious interference claim (Second Amended Ans. 4) existed. They further "[a]dmit[ ] that FIMSA had no knowledge of the purported settlement" (D. 12(n) ¶ 10). In sharp contrast, FIMSA has offered specific proof in P. 12(m) ¶¶ 9–10 of its innocence regarding the alleged interference. Rather than rebut FIMSA's statement, defendants have chosen to make an unsupported blanket assertion that FIMSA knew generally of contractual relations between FCA and Norcross and that FIMSA was "obligated to make further inquiry of Norcross as to the status of the contract between FCA and Norcross" (D. 12(n) ¶ 10).

As a result, defendants have not presented any proof at all for each of two of the required elements of tortious interference. Hence that claim cannot survive summary judgment—either as a defense or as a counterclaim.

■ Only one matter remains for brief discussion: the Fifth Affirmative Defense that seeks to void the Guaranties entirely, based on the notion that FIMSA had dishonestly characterized itself as the successor in interest to First Interstate Commercial Corporation when it entered into the transaction that generated the execution and delivery of the Guaranties. That contention candidly borders on the outrageous:

1. As the initial paragraphs in the "Facts" section of this opinion and n. 3 reflect, any such position is basically at war with defendants' *admissions* on the current motion. And of course assertions in pleadings—particularly those advanced (like these) upon information and belief—cannot stand in the face of a properly supported summary judgment motion.

2. No *facts* are advanced by defendants to support their hypertechnical argument. Again mere pleading contentions do not suffice at the summary judgment stage (Rule 56(e)), nor can defendants' lawyer's brief discussion under the "Lack of Consideration" heading (D.Mem. 46–47) take the place of material facts.

3. Most importantly, nothing is offered to support the notion that the defense—even if successful—would render the Guaranties actually void, rather than voidable at the worst. If the defense is simply one of lack of consideration as the memorandum suggests and as normal principles of law would have it (that is, an argument of voidability rather than

---

**10.** Because this is a diversity action, the familiar principles of *Klaxon Co. v. Stentor Electric Manufacturing Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941) compel resort to Illinois choice-of-law rules. But that search need not be concluded (or even undertaken) where there is no substantive difference in legal rules as between the potential candidates for the source of law (see *In re Air Crash Disaster Near Chicago, Illinois on May 25, 1979,* 644 F.2d 594, 605 & n. 2 (7th Cir.1981)). In this instance, as to Illinois law see *Feldman v. Allegheny International, Inc.,* 850 F.2d 1217, 1224 (7th Cir.1988) (Illinois law requires that a plaintiff "must show (1) he had an enforceable contract; (2) of which the defendant knew"). And as to Pennsylvania law, see *Adler, Barish, Daniels, Levin & Creskoff v. Epstein,* 482 Pa. 416, 431, 393 A.2d 1175, 1183 (1978) (intent to interfere with an existing contract is necessary for liability, adopting Restatement (Second) of Torts § 766); see also Restatement *id.* Comment i:

> To be subject to liability under the rule stated in this Section, the actor must have knowledge of the contract with which he is interfering and of the fact that he is interfering with the performance of the contract.

**11.** *Skagen v. Sears, Roebuck & Co.,* 910 F.2d 1498, 1500 (7th Cir.1990) repeats the lesson taught by *Celotex* and Rule 56(e):

> When a motion is made for summary judgment in a case, an adverse party may not rest upon mere allegations or denials of the adverse party's pleadings but the adverse party's response must set forth specific facts showing that there is a genuine issue for trial.

Defendants have failed to set forth anything to show that there is any genuine issue of any material (that is, outcome-determinative) fact for trial. Thus the material facts as represented by FIMSA must be deemed admitted under this District Court's General Rule 12(n).

outright voidness), it too is barred by the waiver of *all* defenses.

In short, defendants are meritless here as well. Indeed, were it not for the collectibility of attorneys' fees under the Guaranties themselves, this aspect might well be a candidate for fee-shifting under Rule 11.

### Conclusion

FIMSA has stated that this action is a "straightforward guaranty case" (P.R. Mem. 3), and that it is. FIMSA has a legal right to have payment under the Guaranties. That right would be, as Jerome Frank once said, nothing more than a "hole in a doughnut" unless it can be "enforced or vindicated." [12]

This Court will therefore enforce the plain language of the Guaranties. There is no genuine issue of material fact as to FIMSA's claim, and it is entitled to a judgment against each defendant as a matter of law. Judgment is ordered to be entered in favor of FIMSA and against Unicorp and Rosenblum, jointly and severally, in the sum of $2.5 million plus interest, costs, expenses and reasonable attorneys' fees paid or incurred by FIMSA in attempting to collect and enforce any indebtedness covered by or related to the Guaranties.

 Under *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 201–03, 108 S.Ct. 1717, 1721–22, 100 L.Ed.2d 178 (1988) a party's failure to quantify its attorneys' fees claim (even one that, as here, is built into the contract sued upon) does not impair the finality of a judgment for the other amounts to which that party is entitled. For that reason FIMSA is directed to provide to this Court (by a filing in chambers) and to defendants on or before March 18 a statement as to the amount of the proposed judgment, inclusive of all components other than attorneys' fees,[13] for judgment to be entered on March 29, 1991. Defendants are directed to respond (also by a filing in chambers) on or before March 25 either by agreeing to FIMSA's figures or stating the basis for any disagreement.[14] This Court will then enter an order at 8:45 a.m. on March 29 for the appropriate judgment (presumably exclusive of attorneys' fees) to be entered against both defendants.

---

12. Frank, *Courts on Trial: Myth and Reality in American Justice* 105 (Princeton 2d printing 1950).

13. FIMSA may of course also provide a statement as to its claim for attorneys' fees as well. More on that score in n. 14.

14. If FIMSA has also sought to quantify its attorneys' fees claim in its March 18 filing (see n. 13), the parties should seek independently to determine their areas of agreement or disagreement, to be reported to this Court at the time of entry of the March 29 judgment order.