**UNITED AIR LINES, INC., Plaintiff,**

**v.**

**ALG, INC., d/b/a Aviation Leasing Group, Inc., and Tajik Air Limited, Defendants.**

No. 94 C 3619.

United States District Court, N.D. Illinois, Eastern Division.

Feb. 15, 1996.

**794**

Miriam Goldman Bahcall, Coffield, Ungaretti and Harris, Chicago, IL, Christina M. Tchen, Matthew Robert Kipp, Esther N. Iwerebon, Skadden, Arps, Slate, Meagher & Flom, Chicago, IL, for United Air Lines Inc.

John Scott Myers, Richard Thomas Mitchell, O'Connor, Schiff & Myers, Chicago, IL, Howard D. Lay, Kansas City, MO, for ALG Inc.

Kerri Linn McBride, Bixby, Lechner & Potratz, P.C., Chicago, IL, Jerome Wiener, Schain, Firsel & Burney, Ltd., Chicago, IL, for Tajik Air Ltd.

John Scott Myers, Richard Thomas Mitchell, O'Connor, Schiff & Myers, Chicago, IL, for ALG Trust.

### MEMORANDUM OPINION AND ORDER

ASPEN, Chief Judge:

Presently before this court is a motion by Plaintiff United Air Lines ("UAL") to reconsider our Memorandum Opinion and Order of December 4, 1995, wherein we granted in part and denied in part UAL's motion for summary judgment on Counts I–V of its complaint and Counts I–III of ALG's counterclaims.[1] Although we decline to address three of the arguments raised by UAL in its motion for reconsideration, we have requested the parties to brief the issue of whether

ALG had waived its defenses to enforcement of the Guarantee. After careful consideration of the parties' memoranda, we now grant UAL's motion for reconsideration and grant summary judgment to UAL on all counts of the complaint and Counts I–III of ALG's counterclaims.

We assume familiarity with our prior opinion,[2] and therefore only briefly discuss those facts relevant to the instant decision. UAL agreed in 1993 to lease a 747 aircraft to ALG Trust in exchange for rental payments and various other fees. In order to persuade UAL to enter into to this lease agreement (the "Lease"), ALG agreed to guarantee ALG Trust's obligations under the Lease. One portion of the eleven and one-half page long guarantee agreement (the "Guarantee") provided that ALG "absolutely, irrevocably and unconditionally" guaranteed ALG Trust's obligations under the Lease. Complaint, Ex. E, at 1. In addition, the Guarantee also stated that "[t]he obligations of [ALG] hereunder shall be absolute, unconditional and continuing under any and all circumstances and shall be performed by [ALG] regardless of ... any other circumstance *which might otherwise constitute a defense available to or a discharge of the Lessee or the Lessee Trustee in respect of its obligations or liabilities under the Lease Documents.*" *Id.* at 2 (emphasis added). Although UAL cited several other provisions of the Guarantee in its memorandum in support of the motion for summary judgment and its reply memorandum, and argued that it was entitled to judgment as matter of law based on them, it neglected to reference the above quoted language anywhere in its briefing.[3] Consequently, we did not consider this language when ruling on UAL's motion for summary judgment. Now, however, UAL asks us to reconsider our prior opinion and evaluate the affect of this language in the Guarantee. In addition, UAL argues that to the extent Counts I and III of ALG's counterclaims seek recision and damages based on

---

1. In that opinion we also denied UAL's motion for judgment on the pleadings on Count IV of ALG's counterclaims, but UAL does not ask for reconsideration of that ruling.

2. We shall hereinafter refer to specific pages of our December 4, 1995 opinion as "Mem.Op. at ——".

3. The provision was quoted, however, in paragraph 41 of UAL's Local Rule 12(M) statement.

the Lease, these claims should not be considered because as a non-party to the Lease, ALG lacks standing to challenge the agreement.

    At the outset, we observe that litigants must fight an uphill battle in order to prevail on a motion for reconsideration. "Motions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence. Such motions cannot in any case be employed as a vehicle to introduce new evidence that could have been adduced during pendency of the summary judgment motion.... Nor should a motion for reconsideration serve as the occasion to tender new legal theories for the first time." *Keene Corp. v. International Fidelity Ins. Co.*, 561 F.Supp. 656, 665–66 (N.D.Ill.1982) (citations and quotations omitted), *aff'd*, 736 F.2d 388 (7th Cir.1984). In briefing its motion for summary judgment, UAL never maintained that the above quoted provision of the Guarantee constituted a waiver by ALG of any defenses that ALG Trust might have to the Lease. Now, UAL advances this very argument. While we do not condone piecemeal litigation such as this, it lies within our discretion to consider new arguments on a motion for reconsideration of an interlocutory order. *Ruehman v. Village of Palos Park*, 842 F.Supp. 1043, 1065, 1067 (N.D.Ill.1993), *aff'd*, 34 F.3d 525 (7th Cir. 1994). Based on the critical role the above quoted provision plays in the interpretation of the Guarantee, we believe that our discretion should be exercised in this instance to permit consideration of UAL's argument.

    We begin with the unassailable proposition that under Illinois law, which both parties agree controls this diversity action, guarantee agreements are to be construed according to the general rules of contract construction. *McLean County Bank v. Brokaw*, 119 Ill.2d 405, 116 Ill.Dec. 561, 564, 519 N.E.2d 453, 456 (1988). Thus, so long as the language of a guarantee agreement is clear and unambiguous, courts will readily

enforce its provisions, even those containing broad statements of guarantor liability. *Chrysler Credit Corp. v. Marino*, 63 F.3d 574, 577 (7th Cir.1995); *Cohen v. Continental Illinois Nat'l Bank & Trust Co. of Chicago*, 248 Ill.App.3d 188, 188 Ill.Dec. 490, 493, 618 N.E.2d 1060, 1063 (1993). We previously denied summary judgment in part because ALG raised a triable issue of fact over one of the elements of UAL's claim—that is, whether ALG Trust was liable to UAL under the Lease. Mem.Op. at 5 (citing *Continental Bank N.A. v. Everett*, 760 F.Supp. 713, 716 (N.D.Ill.1991), *aff'd*, 964 F.2d 701 (7th Cir.), *cert. denied*, 506 U.S. 1035, 113 S.Ct. 816, 121 L.Ed.2d 688 (1992)). However, the language of the Guarantee clearly obligates ALG to make up for any missed payments by ALG Trust, "regardless of ... any other circumstance which might otherwise constitute a defense available to or a discharge of the Lessee or the Lessee Trustee in respect of its obligations or liabilities under the Lease Documents." Thus, by executing the Guarantee ALG promised not only to guarantee ALG Trust's performance, but also expressly agreed that if UAL came looking for payment, ALG would not raise any defenses that ALG Trust could have presented. Waiver provisions such as this are enforceable under Illinois law, notwithstanding their severity. *Chrysler Credit Corp.*, 63 F.3d at 577; *Kolson v. Vembu*, 869 F.Supp. 1315, 1320–21 (N.D.Ill.1994); *FIMSA, Inc. v. Unicorp Fin. Corp.*, 759 F.Supp. 1297, 1301 (N.D.Ill.1991).[4] ALG's citation to *Halliburton Co. v. Marlen*, 154 Ill.App.3d 111, 107 Ill.Dec. 8, 12, 506 N.E.2d 751, 755 (1987) is unavailing, as the guarantee agreement in that case did not contain a provision waiving any defenses the debtor might have had against the creditor. A contract is not a non-binding statement of the parties' preferences; rather, it is an attempt by market participants to allocate risks and opportunities. Our role as a court is not to redistribute these risks and opportunities as we see fit, but to enforce the allocation the parties have agreed upon. *See In-*

---

4. Although a defense based on the duty of good faith and fair dealing may be excepted from the general rule permitting waiver, *Chemical Bank v. Paul*, 244 Ill.App.3d 772, 185 Ill.Dec. 302, 308, 614 N.E.2d 436, 442 (1993); *BA Mortgage and*

*Int'l Realty Corp. v. American Nat'l Bank and Trust Co. of Chicago*, 706 F.Supp. 1364, 1376–77 (N.D.Ill.1989), we have already concluded that ALG cannot avail itself of this defense, Mem.Op. at 6–8.

*dustrial Representatives, Inc. v. CP Clare Corp.*, 74 F.3d 128, 131–32 (7th Cir.1996). Here, ALG agreed not to claim at a later date that it was absolved of its obligations because UAL did not comply with the terms of the Lease. Because ALG cannot raise the issue of UAL's non-performance of the Lease, and the defendant has not challenged any other elements of UAL's claims, we conclude that UAL is entitled to summary judgment on Counts I–V of its complaint.

Similarly, because ALG agreed to satisfy ALG Trust's obligations regardless of any "circumstance which might otherwise constitute a defense available to or a discharge of the Lessee or the Lessee Trustee," ALG has waived any claim of rescission of the Guarantee based on UAL's nonperformance under the Lease. The fact that ALG styles its argument in the form of a counterclaim is of no moment. *Chrysler Credit Corp.*, 63 F.3d at 579. The above quoted language in the Guarantee is clear, and ALG must live by its word. *See FIMSA*, 759 F.Supp. at 1301. Thus, summary judgment is appropriate on the portion of Count I of ALG's counterclaims seeking rescission of the Guarantee.

■ UAL also argues that summary judgment is appropriate on the remainder of Counts I and III of ALG's counterclaims because ALG was not a party to the Lease, and therefore lacks standing to seek its rescission (Count I) or damages for breach of its terms (Count III). *See White Hen Pantry, Inc. v. Cha*, 214 Ill.App.3d 627, 158 Ill. Dec. 310, 315, 574 N.E.2d 104, 109 (1991) ("[O]nly a party to the contract or those in privity with a party may sue on the contract, except that a third-party beneficiary may sue on a contract made for his benefit.") (citations omitted). ALG does not claim to be a party to the Lease or a third-party beneficiary. Rather, ALG argues that it is entitled to counterclaim under the Lease because it suffered a "direct injury" by virtue of UAL's nonperformance of the Lease. More specifically, ALG argues that by supplying a defective aircraft, UAL prevented ALG Trust from succeeding in its venture and forced it to default on its payments to UAL, thereby causing the "direct injury" to ALG of its liability under the Guarantee. In support,

ALG cites *First Nat'l Bank of Cicero v. Sylvester*, 196 Ill.App.3d 902, 144 Ill.Dec. 24, 554 N.E.2d 1063, *appeal denied*, 133 Ill.2d 555, 149 Ill.Dec. 320, 561 N.E.2d 690 (1990), in which the Illinois Appellate Court permitted a guarantor, who was president and sole shareholder of the debtor, to bring a counterclaim against a creditor seeking repayment. *Id.*, 144 Ill.Dec. at 32, 554 N.E.2d at 1071 ("[G]uarantors who suffer 'direct injury' have standing to 'pursue their own remedies.'") (Quoting *Mid–State Fertilizer Co. v. Exchange Nat. Bank of Chicago*, 877 F.2d 1333 (7th Cir.1989)). However, the *Sylvester* court's primary reason for permitting the counterclaim to go forward was the creditor's failure to raise the issue of standing before the trial court. *Id.* In addition, the case cited by the Illinois Appellate Court actually concluded that guarantor-plaintiffs *did not* have any "direct injury" independent of that inflicted upon the debtor, and thus did not have standing to bring counterclaims against the creditor under RICO and the Bank Holding Company Act. *Mid–State Fertilizer Co.*, 877 F.2d at 1335–36. Thus, *Sylvester* is a questionable barometer of Illinois law.

While it is apparent that Illinois law is ambiguous on this point, *Schenley Affiliated Brands Corp. v. Mar–Salle, Inc.*, 703 F.Supp. 744, 746 & n. 1 (N.D.Ill.1989), we nonetheless believe that the rationale and holding of *Mid–State Fertilizer Co.* applies to the instant case. To be sure, if UAL actually committed the alleged breaches of the Lease, ALG was worse off than if UAL complied with the terms of the Lease. Yet this type of conduct, if true, would not cause "direct injury" to ALG any more than it would cause "direct injury" to any other creditor of ALG Trust. In other words, by choosing to guarantee ALG Trust's performance ALG became a contingent creditor, and if UAL prevails in this action ALG will "succeed[] to [UAL's] claims against [ALG Trust]. We know that creditors cannot recover directly for injury inflicted on a firm, so guarantors as potential creditors likewise cannot recover." 877 F.2d at 1336; *see Continental Bank, N.A. v. Modansky*, 129 B.R. 159, 161–62 (N.D.Ill.1991) (holding that guarantors suffered only indirect injury and could not assert counterclaims owned by debtor). Any

claims for rescission or breach of the Lease belong to ALG Trust, not ALG. Accordingly, because ALG lacks standing to assert its claims for rescission and breach of the Lease, we grant summary judgment on the remainder of Counts I and III of ALG's counterclaim.

For the reasons set forth above, we grant UAL's motion for reconsideration of our Memorandum Opinion and Order of December 4, 1995. Summary judgment is granted to UAL on all five counts of its complaint against ALG, and on Counts I and III of ALG's counterclaims. The parties shall appear for status on February 20, 1996 at 10:00am as previously scheduled, and shall be prepared to discuss how to proceed on ALG's remaining counterclaim for intentional interference with a contractual relationship (Count IV). It is so ordered.