BANK OF BENTON, n/k/a Boatmen's Bank, a corporation, Plaintiff-Appellee, v. ROBIN S. LaBUWI *et al.*, Defendants-Appellants.

Fifth District   No. 5—88—0717

Opinion filed February 22, 1990.

Robert W. Lewis, of Benton, for appellants.

Pamela Lacey, of Hart & Hart, of Benton, for appellee.

JUSTICE CHAPMAN delivered the opinion of the court:

Defendants, John Burlison and Robin LaBuwi, appeal from a summary judgment entered against them in favor of the plaintiff, Bank of Benton, construing defendants' written guaranties to extend a promissory note, the debtor on that note being Prepaid Dental Services, Inc. On appeal defendants argue that the trial court erred in entering summary judgment because material issues of fact exist which must be resolved by the trier of fact.

Prepaid Dental Services, Inc., was a corporation organized in the State of Utah, and which became qualified to transact business in Illinois and Missouri. Defendants John Burlison and Robin LaBuwi be-

came directors and shareholders of the corporation sometime prior to 1983. Prepaid Dental Services, Inc., obtained a loan with the Bank of Benton, now known as Boatmen's Bank of Benton, and each of the defendants signed guaranties in the amount of $8,000 as to the promissory note with the Bank of Benton.

Prepaid Dental Services, Inc., began experiencing financial difficulties, and in 1983 Mr. Kay Walker, an officer and director of the corporation, presented a proposal to its stockholders and directors that a new corporation be formed to provide prepaid dental services in Missouri and Illinois, and that the Utah corporation cease activities in those States. Mr. Walker testified during his deposition that the proposal was presented at a meeting held December 15, 1983. He testified that at that meeting an agreement was executed by the representatives of Prepaid Dental Services, Inc., to carry out the formation of a new corporation under the name Missouri-Illinois Prepaid Dental Services, Inc. A list was subsequently prepared, specifying which stockholders would remain in the original corporation, and which would be included in the new corporation. John Burlison and Robin LaBuwi were listed as stockholders of the new corporation.

Howard Payne, who was chairman of the board and chief executive officer of the Bank of Benton in 1983 and 1984, testified at his discovery deposition that Kay Walker approached him to discuss restructuring the financing of the note held by the bank. Mr. Payne testified that the loan was restructured and that the initial loan was perhaps in a different name than the newly executed loan, but to him it was the same loan because the same people involved in the original note were named in the subsequent note. Mr. Payne did not recall any discussion with Kay Walker about transferring the debt of Prepaid Dental Services, Inc., into another corporation's name. When asked whether he recalled having any meetings regarding the loan prior to consumating the restructured loan, at which Robin LaBuwi and John Burlison were present, Mr. Payne responded, "No."

Kay Walker testified during his deposition that he advised Howard Payne of the intention of the shareholders of Prepaid Dental Services, Inc., to form a new corporation and to take over Prepaid Dental Services, Inc.'s operations in Missouri and Illinois. Mr. Walker testified that an agreement was reached between Mr. Payne and himself whereby the loan would be made to Prepaid Dental Services, Inc., and would later be transferred to the new corporation after the new corporation was organized. Mr. Walker testified that as a condition to the restructuring of the loan, an increase in the existing guaranties executed by the defendants on the original note was required.

He stated at the deposition that both Burlison and LaBuwi were well aware that that was a requirement for the loan. Mr. Walker further testified that both Burlison and LaBuwi were instructed at the time they signed the guaranties that the new entity was not yet in place. Guaranties were in fact executed by the defendants, each guaranty-ing payment on the indebtedness in the amount of $18,000. The defendants' original guaranties of $8,000 each were released to them. Kay Walker testified that after obtaining the new guaranties of the defendants, he signed the new note for $235,000 with the Bank of Benton on January 31, 1984, in the name of Prepaid Dental Services, Inc., a Utah corporation.

Prepaid Dental Services, Inc., subsequently became insolvent and defaulted on the note. The Bank of Benton filed a six-count com-plaint naming as defendants Prepaid Dental Services, Inc., Robin La-Buwi, John Burlison, and other individuals alleged to have executed guaranties on behalf of the note with the Bank of Benton. Summary judgment on the issue of liability was entered against both Burlison and LaBuwi. After a hearing on damages, judgment was entered against defendants Burlison and LaBuwi in the sum of $21,916 each, which represented the amount of their guaranties plus attorney fees of $3,750 and costs of $166. John Burlison and Robin LaBuwi appeal.

The guaranties executed by Burlison and LaBuwi each consist of a single printed form with blanks to be filled in designating the debtor, the creditor, the amount of the guaranty, the State whose laws will govern the construction of the guaranty, the date of execu-tion, and signature lines. Except for the date of execution and the signature of the guarantor, the guaranties executed by Burlison and LaBuwi are virtually identical. Each of the guaranties has handwrit-ten in the blank designated for the debtor's name, *"Prepaid Dental Services, Inc."* The extent of the guaranty is also handwritten, show-ing the amount as *"Eighteen Thousand Dollars ($18,000.00)."* Robin LaBuwi's guaranty has the initials *RSL* written beside the figure designating the amount of the guaranty. John Burlison's guaranty has the initials *JB* written beside the $18,000 figure.

The discovery depositions of defendants John Burlison and Robin LaBuwi confirmed that they knowingly signed the loan guaranties and that each personally guaranteed payment of $18,000 on the re-structured loan. Defendants testified, however, that at the time they signed the guaranties, they believed that the guaranties were against a loan obligation to Missouri-Illinois Prepaid Dental Services, Inc.

Robin LaBuwi testified that he could not recall whether at the time he executed the loan guaranty for $18,000, the space indicating

the debtor on the guaranty as *Prepaid Dental Services, Inc.* was blank or not. He also did not know whether the space indicating the Bank of Benton as the creditor was blank at the time he executed the document. He did recall that the amount of the guaranty was on the form when he signed it, and that he in fact noted his initials on the form near the figure of $18,000. When asked whether anyone representing the Bank of Benton made any statements or representations to him about the loan guaranty agreement, Mr. LaBuwi testified that on the morning of January 23, 1984, Howard Payne advised him that "we were going to have a new loan and have to sign a guaranty for $18,000." Robin LaBuwi testified that at the morning meeting, Mr. Payne also told Mr. Burlison and himself that the loan was going to be a new loan made to the corporation called Prepaid Dental of Illinois and Missouri. Mr. LaBuwi did not remember whether he told Howard Payne that he would not sign a guaranty for a new loan to the Utah corporation, Prepaid Dental Services, Inc. Mr. LaBuwi testified that later that same day he executed the loan guaranty. The only person present when he executed that guaranty was Kay Walker.

Mr. LaBuwi testified that it was one year after the guaranty was executed when he learned that it was for a loan to Prepaid Dental Services, Inc., a Utah corporation, and not for the Missouri-Illinois corporation as he thought. He testified that prior to signing the loan guaranty for $18,000, he was advised by Kay Walker that he would no longer be involved with the Utah corporation but that he would belong to the new corporation of Prepaid of Illinois and Missouri if he signed the guaranty. Mr. LaBuwi testified that even as of the date of the taking of his deposition, he did not in fact know whether he had been divested of his interest in the Utah corporation, nor did he know whether or not the new corporation had ever been formed.

John Burlison testified during his discovery deposition that when he signed the loan guaranty Kay Walker was the only person present. He testified, however, that earlier that morning he met with Howard Payne and that also present at that meeting were Mr. LaBuwi and Dr. Simpson. When asked what was discussed at that meeting, Mr. Burlison testified that Howard Payne told them that "the loan was going to be made to Prepaid Dental of Missouri and Illinois and that Prepaid of Utah, that would be done with, and that there was a new method of paying back because of the separation of the two corporations." John Burlison further testified that at the morning meeting, "we went through it word by word front to back with Mr. Payne for the specific reason that we were concerned, too,

about where the money was going, and we were not going to guarantee anymore [*sic*] money to the Utah corporation, and that was the main reason for having the meeting." When asked whether anyone from the Bank of Benton made any misrepresentations to him about the loan guaranty, Mr. Burlison, referring to the meeting one year after the guaranty was signed, stated, "I was told at the meeting at the bank that it was a Utah corporation and it was on this form after—like I say, I don't know when it was put there, but it was there, and no way did I guarantee anything to a Utah corporation."

Mr. Burlison testified that prior to the signing of the loan guaranty he attended a meeting for the purpose of forming Prepaid of Missouri-Illinois. He testified that at that meeting Kay Walker and Mr. Lake said that they were going to handle the documents necessary to complete the formation of the corporation. Mr. Burlison testified that the new corporation was documented and viable, although he was uncertain of the date. He stated that he never attended a meeting of the new corporation, and to his knowledge, the new corporation has never had a meeting. He has never received any stock in the new corporation, and he testified that as far as he knew he never surrendered the stock he held in the Utah corporation.

Defendants argue on appeal that summary judgment was improperly granted because there exist factual disputes as to the following: (1) what the defendants knew and intended at the time the guaranties were executed; (2) the status of defendants as stockholders and directors of the Utah corporation; (3) whether the defendants received the loan proceeds and controlled the disbursement thereof; (4) who was charged with organizing the Missouri-Illinois corporation; and (5) which corporation the guaranties are expressly applicable to.

A motion for summary judgment may be granted when the pleadings, depositions and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law (Ill. Rev. Stat. 1987, ch. 110, par. 2—1005; *Addison v. Whittenberg* (1988), 124 Ill. 2d 287, 294, 529 N.E.2d 552, 555). The purpose of summary judgment is not to try an issue of fact, but to determine whether a triable question of fact exists. (*Miller v. Smith* (1985), 137 Ill. App. 3d 192, 196, 484 N.E.2d 492, 495-96.) Summary judgment is a drastic remedy and must be awarded with caution in order to avoid preempting a litigant's right to trial by jury or his right to fully present the factual basis of a case where a material dispute may exist. (*Holbrook v. Peric* (1984), 129 Ill. App. 3d 996, 998, 473 N.E.2d 531, 534.) Moreover, the pleadings, affidavits, exhibits

and depositions on file should be construed by the trial court strictly against the party moving for summary judgment and liberally in favor of the opponent. (*Shockley v. Ryder Truck Rental, Inc.* (1979), 74 Ill. App. 3d 89, 94, 392 N.E.2d 675, 677-78.) When the evidence shows no material issue of fact has been raised, the moving party is entitled to judgment as a matter of law. *Artis v. Fibre Metal Products* (1983), 115 Ill. App. 3d 228, 231-32, 450 N.E.2d 756, 758.

■ Plaintiff argues that the factual disputes alleged by the defendants are not material to the underlying litigation and that, therefore, the court properly entered summary judgment. It is true that no matter how sharply controverted, facts irrelevant to the essential elements of plaintiff's cause of action will not warrant denial of a motion for summary judgment. (*Equity General Insurance Co. v. Patis* (1983), 119 Ill. App. 3d 232, 236, 456 N.E.2d 348, 351.) We have reviewed the pleadings and other matters that have been submitted and find that of the factual issues defendants contend exist, only the issue of whether the guaranties are ambiguous is a material issue to the underlying litigation. We address that issue below.

■ The rules of construction applicable to contracts generally also apply to contracts of guaranty (*State Bank v. Cirivello* (1978), 74 Ill. 2d 426, 431, 386 N.E.2d 43, 45), and if such a contract is unambiguous, it must be enforced as written. (*Du Quoin State Bank v. Daulby* (1983), 115 Ill. App. 3d 183, 185, 450 N.E.2d 347, 349.) A guaranty contract which is unequivocal in its terms must be interpreted according to the language used, for it is presumed that the parties meant what their language clearly imports. (*Bank of Homewood v. Sjo* (1983), 113 Ill. App. 3d 179, 182, 446 N.E.2d 1214, 1216.) The defendants acknowledge that they signed the guaranties. They contend, however, that the guaranties are ambiguous because it is not certain whether the name *Prepaid Dental Services, Inc.*, refers to the Utah corporation or the new corporation, and that, therefore, an ambiguity exists on the face of the instruments. They also contend that the name *Prepaid Dental Services, Inc.* may not have appeared on the guaranties when they signed them.

■ As to the defendants' contention that the agreement was ambiguous, there can be no doubt that the reference to *Prepaid Dental Services, Inc.* referred to the Utah corporation. Both defendants acknowledge that Prepaid Dental Services, Inc., was the name given the Utah corporation for which they originally each executed guaranties of $8,000. The parties were aware of the financial strain Prepaid Dental Services, Inc., was under, that the original note with the Bank of Benton had not been satisfied, and that the obligation to the

Bank of Benton was being refinanced. It is clear that the parties intended the new guaranties to prevent the bank from suffering any actual loss in connection with its loan to Prepaid Dental Services, Inc., while at the same time insuring the financial stability of the corporation's operation, be it the Utah corporation or the new entity. Clearly the parties did not intend that the execution of the new guaranties would mean that Robin LaBuwi's and John Burlison's obligations would be discharged through any presumed, but merely technical, satisfaction of the original indebtedness. We find that the guaranties executed by the defendants are unambiguous.

■ As to the defendants' contention that *Prepaid Dental Services, Inc.* may not have appeared on the guaranties, the conduct of the parties to this action shows the trial court's interpretation of the guaranties to be correct. (See *Telegraph Savings & Loan Association v. Guaranty Bank & Trust Co.* (1978), 67 Ill. App. 3d 790, 794-95, 385 N.E.2d 97, 100-01; *Du Quoin State Bank v. Daulby* (1983), 115 Ill. App. 3d 183, 450 N.E.2d 347.) After the guaranties were executed and the loan was refinanced, proceeds of the new note were disbursed through a checking account on which checks with the name *Dental Associates* were drawn. With the authorization of the defendants, Kay Walker issued checks to pay preexisting debts of the Utah corporation.

Robin LaBuwi testified at his deposition that even as of the date of the taking of his deposition he did not know whether he had been divested of his interest in the Utah corporation, nor did he know whether or not the new corporation had ever been formed. John Burlison testified that the new corporation was viable, although to his knowledge there had never been a meeting of the directors and/or shareholders of the new corporation. Neither LaBuwi nor Burlison had ever received any stock in the new corporation, and neither knew whether he had been divested of his interest in the Utah corporation. To find that the defendants' liability on their guaranties did not extend to the Utah corporation would not effectuate the intent of the parties, as expressed through their conduct. It would also permit the defendants to sit quietly by, benefiting from the loan proceeds, until the present suit was filed.

The defendants' conduct in benefiting from release of the prior guaranties, knowing that the Utah corporation was in financial difficulty, and benefiting from the loan proceeds of the refinanced obligation, clearly establishes that even if the debtor's name did not appear on the guaranties at the time they were executed, the name of the debtor was ultimately properly written upon the documents.

Accordingly, the judgment of the circuit court of Franklin County is affirmed.

Affirmed.

RARICK and WELCH, JJ., concur.