**MERRILL LYNCH BUSINESS FINANCIAL SERVICES, INC., Plaintiff,**

v.

**PLESCO, INC. d/b/a Plesco Foods, Vlema Corp. d/b/a 2 Street Cafe, Assos, Inc., James Plessas, and Demetrios C. Mantzaridis, Defendants.**

**James PLESSAS, Third–Party Plaintiff,**

v.

**Anthony WONG, Shelly Wong, and George Nassis, Third–Party Defendants.**

Civ. A. No. 94–512.

United States District Court, E.D. Pennsylvania.

Aug. 1, 1994.

Francis X. Manning, Stradley, Ronon, Stevens & Young, Philadelphia, PA, for Merrill Lynch Business Financial Services, Inc.

Robert A. Rosin, Philadelphia, PA, for Vlema Corp. d/b/a 2 Street Cafe, Assos, Inc. and James Plessas.

Albert A. Ciardi, Jr., Ciardi, Fishbone & Di Donato, and Aris J. Karalis, Philadelphia, PA, for Demetrios C. Mantzaridis.

Steven E. Angstreich, Levy, Angstreich, Finney, Mann & Burkett, P.C., Philadelphia, PA, for Anthony Wong and Shelley Wong.

## MEMORANDUM AND ORDER

YOHN, District Judge.

Currently before the court are motions by plaintiff Merrill Lynch Business Financial Services, Inc. ("MLBFS") to: (1) dismiss or strike the affirmative defenses and the set-offs and counterclaims asserted by defendants Vlema Corp., Assos, Inc., and James Plessas (collectively referred to as "the Plessas defendants"); and (2) dismiss or strike

the affirmative defenses and the setoff and counterclaim asserted by defendant Demetrios C. Mantzaridis.[1] Also pending before the court is MLBFS's motion for leave to file an amended complaint. For the reasons discussed below, the court will grant MLBFS's motion to amend the complaint and both grant and deny in part its motions to dismiss or strike.

## BACKGROUND

Beginning in April of 1990, MLBFS provided credit and lent money to defendant Plesco, Inc. so that Plesco could conduct its business—the sale of perishable and nonperishable goods to wholesale and commercial food establishments. Specifically, on or about April 16, 1990, Plesco entered into a Working Capital Management Account Agreement and related Note and Security Agreement ("the WCMA Agreement") with MLBFS whereby MLBFS agreed to provide Plesco with a revolving line of credit not to exceed $500,000. (Compl. ¶ 8 & Ex. A.) Thereafter, MLBFS extended further credit to Plesco under two Collateral Installment Notes ("the Notes"). (Id. ¶¶ 9, 10 & Exs. B, C.) To secure payment and performance of its obligations under the WCMA Agreement and the Notes, Plesco granted MLBFS a first security interest in all of Plesco's inventory and accounts as well as other additional collateral. (Id. ¶ 12 & Ex. D.) As further security for Plesco's obligations under the WCMA Agreement and the Notes, each of the Plessas defendants and Mantzaridis entered into guaranties ("the Guaranties") of those obligations.[2] (Id. ¶ 13 & Exs. E–H.) Finally, as additional security, James Plessas assigned to MLBFS a first lien and security interest in a securities account held in his name by Merrill Lynch, Pierce, Fenner & Smith, Inc. (Id. ¶ 16 & Ex. I.)

On July 12, 1993, MLBFS declared Plesco in default for failure to meet its obligations and demanded payment of a total outstanding balance of approximately $357,701.67 from Plesco and from each of the Guarantors. (Id. ¶ 18 & Ex. J.) Since neither Plesco nor any of the Guarantors responded with payment, MLBFS liquidated Plesco's inventory, confessed judgment against Plesco's accounts receivable, and sold the securities held in James Plessas' account by Merrill Lynch, Pierce, Fenner & Smith, Inc. (Id. ¶¶ 19, 22.) MLBFS alleges that it netted $78,294.47 from the above actions, and that despite repeated demands all of the defendants have refused to pay the remaining balance of $289,855.70. (MLBFS Mot. to Dismiss at 5; Compl. ¶¶ 20–23.)

On January 26, 1994, MLBFS instituted this action seeking damages for breach of contract based upon the defendants' refusal to pay the remaining balance on the WCMA Agreement and the Notes.[3] The Plessas defendants answered the complaint on February 25, 1994, setting forth six affirmative defenses. They also asserted cross-claims against Mantzaridis and Plesco for contribution and indemnification. Additionally, James Plessas individually asserted a cross-claim against Plesco seeking payment of the balance allegedly due him on a Promissory Note allegedly executed by Plesco ("the Plessas–Plesco Note").

Moreover, the Plessas defendants asserted a setoff and counterclaim against MLBFS that essentially challenges MLBFS's handling of the liquidation of Plesco's inventory and collection of Plesco's accounts receivable. According to the Plessas defendants, had MLBFS properly liquidated the inventory and collected the accounts receivable, MLBFS would have collected an amount in excess of Plesco's indebtedness, thereby relieving the Plessas defendants of any liability. James Plessas also individually asserted a counterclaim against MLBFS seeking damages in the amount allegedly due him under the Plessas–Plesco Note. He contends that

---

1. MLBFS alternatively seeks summary judgment on the affirmative defenses and setoffs and counterclaims of both the Plessas defendants and Mantzaridis. The court, however, has not treated MLBFS's motions as ones for summary judgment.

2. Hereinafter, the Plessas defendants and Mantzaridis are collectively referred to as "the Guarantors."

3. The court has subject matter jurisdiction over this action on the basis of diversity of citizenship. See 28 U.S.C. § 1332.

822

because the Plessas–Plesco Note was secured by liens on Plesco's assets, MLBFS's improper liquidation of Plesco's inventory and collection of Plesco's accounts receivable completely destroyed his security interest in Plesco's assets.

Finally, James Plessas filed a third-party complaint against Anthony Wong, Plesco's President, Shelly Wong, Plesco's Secretary, and George Nassis, Plesco's Treasurer. Plessas alleges that the third-party defendants "took and removed substantial assets from the business premises of Plesco, Inc. and converted the same to their own personal use without accounting to [Plessas or MLBFS] for the same." (Third Party Compl. ¶ 9.) He seeks an "accounting of all assets of the business premises of Plesco, Inc. ... prior to any property and assets being removed by the third party defendants" and damages for the amount allegedly due him under the Plessas–Plesco Note as well as the amount claimed by MLBFS in the complaint. (*Id.* ¶ 11.)

Mantzaridis answered MLBFS's complaint on March 15, 1994. He asserted seven affirmative defenses as well as cross-claims against the Plessas defendants and Plesco for contribution and indemnification. Additionally, he asserted a setoff and counterclaim against MLBFS that mirrors the one asserted by the Plessas defendants—namely, that had MLBFS properly liquidated Plesco's inventory and collected Plesco's accounts receivable, MLBFS would have collected an amount in excess of Plesco's indebtedness, thereby relieving Mantzaridis of any liability. Anthony and Shelly Wong answered the third-party complaint on April 13, 1994 and asserted cross-claims against Nassis and Mantzaridis for contribution and indemnification.[4]

On May 10, 1994, MLBFS filed a motion seeking leave to file an amended complaint in order to assert additional claims against Mantzaridis and to assert claims against third-party defendants Anthony and Shelly Wong and George Nassis. The proposed amended complaint asserts claims for conver-

sion, breach of fiduciary duty, and negligence against Mantzaridis, Nassis, and the Wongs. MLBFS's motion for leave to file an amended complaint as well as its motions seeking to dismiss or strike the affirmative defenses and the setoffs and counterclaims asserted by the Guarantors have now been fully briefed and are ready for disposition.

## DISCUSSION

### A. *Motion for Leave to File an Amended Complaint*

The Federal Rules of Civil Procedure provide that leave to amend a pleading "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). Although the decision to grant or deny leave to amend a complaint is committed to the sound discretion of the district court, leave should, consistent with the command of Rule 15(a), be liberally granted. *Gay v. Petsock,* 917 F.2d 768, 772 (3d Cir.1990); *Coventry v. U.S. Steel Corp.,* 856 F.2d 514, 518–19 (3d Cir.1988). The United States Supreme Court has articulated the following standard to be applied in evaluating whether to grant or deny leave to amend:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

*Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962).

The keys to granting leave to amend a complaint are the absence of prejudice to opposing parties and the ability of the amended pleading to support a claim for relief. *See Cornell & Co., Inc. v. Occupational Safety & Health Review Commission,*

---

4. Nassis has not been properly served with the third-party complaint and has not responded thereto. Plesco has not responded to MLBFS's complaint, and default was entered against it on May 5, 1994. (*See* document # 20.)

573 F.2d 820, 823 (3d Cir.1978) ("It is well-settled that prejudice to the non-moving party is the touchstone for the denial of an amendment") (citations omitted); *Massarsky v. General Motors Corp.*, 706 F.2d 111, 125 (3d Cir.) ("The trial court may properly deny leave to amend where the amendment would not withstand a motion to dismiss"), *cert. denied*, 464 U.S. 937, 104 S.Ct. 348, 78 L.Ed.2d 314 (1983). Mantzaridis and Anthony and Shelly Wong have opposed MLBFS's motion for leave to file an amended complaint,[5] contending that the new claims asserted in the amended complaint would not survive a motion to dismiss and that they would be prejudiced if leave were to be granted. For the reasons discussed below, the court will grant MLBFS leave to file the amended complaint.

The new claims asserted in the amended complaint stem from the following factual allegations: MLBFS contends that on or about Friday, July 9, 1993, Anthony Wong informed MLBFS that Plesco was terminating its business operations. (Am.Compl. ¶ 32.) On Monday, July 12, 1993, MLBFS declared Plesco in default of its obligations and MLBFS representatives arrived at the Plesco facility to secure the inventory and accounts receivable documentation that served as the collateral for Plesco's obligations to MLBFS. (*Id.* ¶¶ 33–34.) MLBFS alleges that "Anthony Wong and other unidentified individuals entered the Plesco facility over the weekend of July 10 and 11, before MLBFS had access to the Plesco facility, and removed ... a substantial portion of Plesco's inventory.... [that] served as part of the collateral which secured MLBFS's loans to Plesco." (*Id.* ¶ 34–35.)

MLBFS has asserted a cause of action for conversion against the Wongs, Nassis, and Mantzaridis based upon the alleged wrongful removal of collateral from Plesco's facility. MLBFS has also asserted claims for breach of fiduciary duty and negligence. According to MLBFS, when Plesco decided to terminate its operations, the Wongs, Nassis, and Mantzaridis, as officers and directors of Plesco, "became trustees of Plesco's assets for the benefit of Plesco's creditor MLBFS and thereby assumed a fiduciary duty to MLBFS." (*Id.* ¶ 40.) This fiduciary duty allegedly imposed upon the Wongs, Nassis, and Mantzaridis an obligation "to conduct the affairs of Plesco so as not to harm or deplete or put at risk any of Plesco's assets, including the collateral which secured MLBFS's loans to Plesco." (*Id.* ¶ 41.) MLBFS alleges that the Wongs, Nassis, and Mantzaridis violated their alleged fiduciary duty "[b]y converting a substantial portion of Plesco's inventory to their own personal use or to the use of business entities other than Plesco." (*Id.* ¶ 42.)

MLBFS's negligence claim against the Wongs, Nassis, and Mantzaridis likewise revolves around their roles as directors and officers of Plesco.[6] MLBFS alleges that those roles imposed upon them, once Plesco had decided to terminate its business, a duty to MLBFS "to use reasonable care in the use and disposition of Plesco's assets." (*Id.* ¶ 46.) Accordingly, "[b]y removing a substantial portion of the inventory without notifying MLBFS or accounting to it for the value of the inventory, [they] breached their duty to MLBFS." (*Id.* ¶ 47.)

Both the Wongs and Mantzaridis contend that because the new counts asserted in the amended complaint would not survive a motion to dismiss, MLBFS's motion to amend should be denied. The court's ability to evaluate this argument is, however, hindered by the limited nature of the parties' briefing of the issue. The Wongs brazenly claim, with-

---

5. Nassis, who has not been properly served with the third-party complaint or responded thereto, *see supra* n. 4, was not served with a copy of MLBFS's motion for leave to file an amended complaint. By a letter sent to the Clerk of this district as well as to all counsel involved in this action, Nassis' attorney represented that Nassis received a discharge in bankruptcy on May 2, 1994. Accordingly, he contends that the claims asserted against Nassis in the third-party complaint were discharged by virtue of the bankrupt-

cy proceedings. The court assumes that if this discharge precludes the claims that MLBFS proposes to assert against Nassis in the amended complaint, then MLBFS will either withdraw or not pursue those claims.

6. The amended complaint, unlike the original complaint, alleges that Mantzaridis is an officer and director of Plesco. (*Compare* Am.Compl. ¶ 6 *with* Compl. ¶ 6.)

out any citation to case-law or further elaboration, that "breach of fiduciary duty and negligence are not causes of action recognized under Pennsylvania law." (Wongs' Opp'n to MLBFS's Mot. to Amend at 5.) Mantzaridis' contention is less shocking and more tenable: He argues, with supporting citations to case-law, that his only relationship to MLBFS—that of guarantor to lender of a loan—does not, under Pennsylvania law, impose upon him either a fiduciary or other duty to MLBFS.

The court's task in determining whether the negligence and breach of fiduciary duty claims would survive a motion to dismiss is further complicated by the parties' dispute over which state's law should apply to those claims. MLBFS's reply to Mantzaridis's contention that Pennsylvania law precludes those claims does not address the merits of applicable Pennsylvania law but instead contends that Illinois law should apply. Likewise, Mantzaridis never addresses whether MLBFS would, as it contends, have a cause of action for breach of fiduciary duty and negligence under Illinois law. Indeed, all of the parties give short shrift to the threshold choice-of-law issue, offering the court only limited analysis bereft of any citation to authority.[7]

Thus, there is simply not enough information available to the court at this juncture for it to determine whether the new claims asserted in the amended complaint would survive a motion to dismiss. Consequently, the court feels that the preferable option would be to grant MLBFS leave to file the amended complaint without prejudice to the defendants' right to file motions to dismiss the amended complaint.[8] Should the defendants choose to do so, the court suggests that they, as well as MLBFS, devote greater attention to the choice-of-law question and address the

sufficiency of MLBFS's claims under both Pennsylvania and Illinois law.

■ Moreover, granting MLBFS leave to file the amended complaint will not unfairly prejudice either Mantzaridis or the Wongs. Both are already parties to this litigation. MLBFS's motion to amend was filed relatively early in the proceedings—indeed, only approximately four weeks after the Wongs answered the third-party complaint and approximately eight weeks after Mantzaridis answered MLBFS's original complaint. The Wongs already must defend the third-party complaint, the central premise of which—the alleged wrongful removal of collateral from Plesco's facility—is similar to the factual allegations that underlie MLBFS's new claims against them. Likewise, Mantzaridis already must defend a cross-claim asserted by the Wongs involving the same central premise—the alleged wrongful removal of collateral from Plesco's facility.

Furthermore, as MLBFS correctly points out, were the court to deny its motion to amend, it could sue the Wongs and Nassis in a separate action asserting the same claims contained in the amended complaint. Such an action would likely be consolidated with the already pending related action, and in any event "it is clearly preferable to dispose of all the contentions between [the] parties in one proceeding." *Jenn–Air Products Co. v. Penn Ventilator, Inc.*, 283 F.Supp. 591, 594 (E.D.Pa.1968).

Lastly, both Mantzaridis and the Wongs also contend that MLBFS's motion to amend should be denied because MLBFS has not identified any evidentiary support or source for the factual allegations that form the basis of the new claims asserted in the amended complaint. According to Mantzaridis and the Wongs, the new claims asserted in MLBFS's amended complaint merely parrot the allega-

---

7. The Wongs and MLBFS each devote two sentences to the issue; Mantzaridis simply never addresses it.

8. Mantzaridis also contends that the conversion claim is deficient as to him because the amended complaint fails to allege that he took or converted any of Plesco's inventory; it only alleges that he did not provide an accounting. (*See* Mantzar-

idis' Opp'n to MLBFS's Mot. to Amend at 7.) The amended complaint also fails to allege that Shelly Wong took or converted any of Plesco's inventory. While these omissions may perhaps be fatal to MLBFS's conversion claim against Mantzaridis and Shelly Wong (and, indeed, at least as to Mantzaridis, MLBFS concedes that they may be), the court will address that issue if and when Mantzaridis and the Wongs file motions to dismiss the amended complaint.

tions contained in the third-party complaint, and MLBFS lacks a good faith belief in the truth of those allegations. The court, however, finds this rationale for denying MLBFS leave to amend unpersuasive for two reasons.

■ First, for the purposes of determining whether the new claims asserted in the amended complaint would survive a motion to dismiss, the court is concerned solely with the sufficiency of MLBFS's pleadings, not the sufficiency of its evidence or the source of its factual allegations. *See Rocks v. Philadelphia*, 868 F.2d 644, 645 (3d Cir.1989) (in reviewing a motion to dismiss, the court must accept as true all of the non-moving party's allegations and all reasonable inferences that can be drawn therefrom, and must view them in the light most favorable to the non-moving party). And second, although bad faith is a proper ground upon which to deny a party leave to amend, *see Foman, supra*, 371 U.S. at 182, 83 S.Ct. at 230, it is not clear to the court that MLBFS lacks a good faith belief in the factual allegations that underlie its new claims. Should it later become apparent that such factual allegations have no support and that MLBFS was not justified in asserting the new claims, the Wongs and Mantzaridis (and Nassis) have the remedy of applying for sanctions under Rule 11. *See Feldman v. Trust Company Bank*, 1993 WL 405831, at *6 n. 5 (E.D.Pa. Oct. 4, 1993). Accordingly, the court will grant MLBFS leave to file the amended complaint.

B. *Motions to Dismiss or Strike the Guarantors' Affirmative Defenses and Setoffs and Counterclaims*

MLBFS contends that the affirmative defenses and the setoff and counterclaims asserted by the Guarantors are precluded by the terms of the Guaranties. The relevant portions of the Guaranties state:

The undersigned further expressly waive (i) all diligence in collection and any failure or delay by MLBFS in protection or perfection of MLBFS's rights under the Guaranteed Documents or in or to any collateral securing any of Principal's Obligations, (ii) notice of acceptance by MLBFS of this Guaranty or of any of the Guaranteed Documents, (iii) notice of advancement of any funds to or for the benefit of Principal, (iv) presentment, demand for payment, protest and notice of protest, default, notice of of maturity, nonpayment or partial payment by Principal, (v) all other notices and formalities to which Principal and/or the undersigned might be entitled, by statute or otherwise, and (vi) any other circumstances which might constitute a defense to enforcement of this Guaranty.

The undersigned further waive any right of setoff, recoupment or counterclaim against MLBFS with respect to any claim or demand the undersigned may at any time have against Principal, or against any other person or concern liable for Principal's Obligations, and as further security to MLBFS any and all debts or liabilities now or hereafter owing to the undersigned by Principal and/or by such other person or concern, and any lien, security or collateral given to the undersigned in connection therewith, are hereby subordinated to the claims and liens of, and assigned to, MLBFS. Further, the undersigned hereby waives any claim the undersigned may have to indemnification, reimbursement, contribution or subrogation from Principal for any amount paid by the undersigned pursuant to this or any other guaranty. The obligations of the undersigned hereunder are and shall at all times be the original, direct and primary obligations of the undersigned, as if the undersigned were the Principal. MLBFS shall not in any event be obligated to pursue or exhaust any rights or remedies against Principal or others, or resort to any security, prepayments or collateral, as a prerequisite to enforcing this Guaranty against the undersigned.

(Compl.Exs. E, F, G, H.) The Plessas defendants and Mantzaridis advance numerous arguments, many of which overlap, as to why their respective affirmative defenses and counterclaims should not be barred notwithstanding the above-quoted language in the Guaranties. Their contentions are addressed in turn below.

(1) Obligation of Good Faith and Fair Dealing

The essence of the Guarantors' counterclaims is that MLBFS liquidated Plesco's

inventory and collected Plesco's accounts receivable—the assets of Plesco in which MLBFS held a security interest—in a negligent, careless, unreasonable, and improper manner. (*See* Mantzaridis' Counterclaim ¶¶ 6, 9; Plessas defendants' Counterclaim ¶¶ 6, 9.) According to the Guarantors, had MLBFS properly disposed of those assets rather than dissipating them, it would have collected an amount in excess of Plesco's indebtedness, thereby relieving the Guarantors of any liability. (*Id.*)

MLBFS's response to the Guarantors' counterclaims is quite simple: By the terms of the Guaranties, the Guarantors expressly waived the right to assert such counterclaims. The Guarantors dispute this contention, and instead argue that Illinois law[9] imposed upon MLBFS a non-waivable obligation to dispose of Plesco's collateral in good faith. Accordingly, they contend that because they have alleged that MLBFS breached this duty by acting in bad faith in the disposition of Plesco's collateral,[10] their counterclaims are not barred by the Guaranties' waiver provisions.

■ Under Illinois law, guaranties are contracts that are legally enforceable in accordance with their express provisions. *FIMSA, Inc. v. Unicorp Financial Corp.*, 759 F.Supp. 1297, 1300 (N.D.Ill.1991). As such, "[t]the rules of construction applicable to contracts generally also apply to contracts of guaranty, and if such a contract is unambiguous, it must be enforced as written." *Bank of Benton v. LaBuwi*, 194 Ill.App.3d 489, 141 Ill.Dec. 562, 566–67, 551 N.E.2d 749, 753–54 (1990) (citations omitted).[11] "That

principle applies with full vigor to waivers in a guaranty: When they are clear and unambiguous, Illinois courts consistently enforce them." *BA Mortg. & Intern. Realty Corp. v. American Nat. Bank and Trust Co. of Chicago*, 706 F.Supp. 1364, 1376 (N.D.Ill.1989), *citing Morris v. Columbia Nat. Bank of Chicago*, 79 B.R. 777, 782 (N.D.Ill.1987); *see also FIMSA, supra*, 759 F.Supp. at 1301. Nevertheless, Illinois law does imply a covenant of good faith and fair dealing into every contract absent express disavowal. *BA Mortg., supra*, 706 F.Supp. at 1373. Moreover, "[u]nder Illinois law, a waiver of defense clause does not 'expressly disavow' the covenant of good faith implied into all contracts." *Chemical Bank v. Paul*, 244 Ill.App.3d 772, 185 Ill.Dec. 302, 310, 614 N.E.2d 436, 442 (1993) (citations omitted).

■ Here, the Guarantors waived both "any right of setoff, recoupment or counterclaim against MLBFS with respect to any claim or demand [they] may at any time have against [Plesco], or against any other person or concern liable for [Plesco's] Obligations . . . .," (compl. Exs. E–H), as well as "any failure or delay by MLBFS in protection or perfection of MLBFS's rights . . . in or to any collateral securing any of [Plesco's] Obligations, . . . and any other circumstances which might constitute a defense to enforcement of [the Guaranties]." (*Id.*) The Guaranties' waiver provisions do not, however, expressly disavow the covenant of good faith and fair dealing. Therefore, it follows that the Guarantors did not waive MLBFS's duty to act in good faith.[12]

9. The Guaranties provide that they "shall be governed in all respects by the laws of the State of Illinois." (*See* Compl. Exs. E–H.) None of the parties contests the applicability of Illinois law to MLBFS's breach of contract cause of action although the Plessas defendants purport to reserve the right to do so at a later date. (*See* Plessas defendants' Opp'n to MLBFS's Mot. to Dismiss at 5 n. 1.)

10. The Guarantors' counterclaims do not specifically allege that MLBFS acted in bad faith in disposing of Plesco's collateral. Nevertheless, an inference to that effect may reasonably be drawn from the substance of the Guarantors' factual allegations. *See Rocks v. Philadelphia*, 868 F.2d 644, 645 (3d Cir.1989) (in reviewing a motion to

dismiss, the court must accept as true all of the non-moving party's allegations and all reasonable inferences that can be drawn therefrom, and must view them in the light most favorable to the non-moving party).

11. *See also Citicorp Savings of Illinois v. Ascher*, 196 Ill.App.3d 570, 143 Ill.Dec. 474, 476, 554 N.E.2d 409, 411 (1990) ("A guaranty must be construed as any other contract to determine the intent of the parties. Where the language is not ambiguous, it must be construed according to its terms") (citations omitted).

12. Other cases hold simply that the duty of good faith and fair dealing is not waivable irrespective of the presence or absence of express disavowal.

MLBFS disputes this conclusion, however, contending that "while courts may be reluctant to find a waiver of good faith *before* default occurs, such as in the inducement to sign the guaranties, the courts have shown no reluctance when the issue concerns impairment of collateral." (MLBFS's Reply Mem. at 6.) In support of this theory, MLBFS relies mainly upon *Continental Bank N.A. v. Everett,* 760 F.Supp. 713, 724 (N.D.Ill.1991), *aff'd,* 964 F.2d 701 (7th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 816, 121 L.Ed.2d 688 (1992).

In *Continental Bank,* an action brought by a lender against three guarantors, the court held that the waiver provisions of the guaranties in question precluded the guarantors from asserting an impairment of collateral defense based upon the failure of the lender to perfect its security interest in one of the principal debtor's assets. MLBFS seizes upon this holding in an attempt to convince the court that the Guarantors have waived their right to assert counterclaims (as well as affirmative defenses) based upon a breach of the duty of good faith. The court in *Continental Bank,* however, drew a distinction between an impairment of collateral defense and a bad faith defense, and clearly held that the latter had not been waived and indeed was not waivable. *See Continental Bank,* 760 F.Supp. at 721 ("Defendants' objection to Continental's failure to perfect a security interest, unlike good faith conduct, is waivable") (citation omitted). Thus, the court is convinced that the Guarantors waived neither the defense of bad faith nor a counterclaim based upon MLBFS's alleged bad faith in disposing of Plesco's collateral.

 The conclusion that the Guarantors did not waive the covenant of good faith and fair dealing does not, however, end the court's inquiry. One further issue remains— namely, whether the Guarantors' counterclaims (and corresponding affirmative defenses) premised upon MLBFS's alleged bad faith in disposing of Plesco's collateral are precluded by the Guaranties' provision that "MLBFS shall not ... be obligated to pursue or exhaust any rights or remedies against [Plesco] or others, or resort to any security, prepayments or collateral, as a prerequisite to enforcing [the Guaranties]." (Compl. Exs. E–H.)

In *United States v. Shirman,* 41 F.R.D. 368 (N.D.Ill.1966), the court held that where a creditor has no duty to attempt collection from the principal debtor before looking to the guarantor, the guarantor cannot avail itself of "the defense that the creditor through negligence, or lack of due diligence, lost or dissipated the collateral furnished by the debtor." *Id.* at 371–373 (citations and internal quotation marks omitted). This holding is clearly logical, for it certainly stands to reason that if a creditor has no obligation to resort to a principal debtor's collateral prior to pursuing a guarantor, the guarantor should not be able to invoke a defense or counterclaim based upon the alleged mishandling of the collateral that the creditor had no obligation to pursue. Nevertheless, *Shirman*'s holding is supported almost exclusively by citation to non-Illinois case-law and does not consider the applicability of the covenant of good faith and fair dealing. The only Illinois case cited—*Barrett v. Shanks,* 382 Ill. 434, 47 N.E.2d 481 (1943)—does offer some support for *Shirman*'s holding, *see Barrett,* 47 N.E.2d at 484, although it too simply does not addresses the applicability of the covenant of good faith and fair dealing.

In its various memoranda in support of its motion to dismiss the Guarantors' setoffs and counterclaims and to strike their affirmative defenses, MLBFS focuses much of its energy upon the argument that the Guarantors waived the duty of good faith. MLBFS cites only *Shirman* in support of the contention that because it had no obligation to either seek payment from Plesco or resort to Plesco's collateral prior to pursuing payment

*See Continental Bank N.A. v. Everett,* 760 F.Supp. 713, 717 (N.D.Ill.1991), *aff'd,* 964 F.2d 701 (7th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 816, 121 L.Ed.2d 688 (1992); *BA Mortg. & Intern. Realty Corp. v. American Nat. Bank and Trust Co. of Chicago,* 706 F.Supp. 1364, 1376 (N.D.Ill.

1989); *Morris v. Columbia National Bank of Chicago,* 79 B.R. 777, 785 (N.D.Ill.1987). This distinction is of no relevance here, however, since the Guaranties' waiver provisions are not sufficient to expressly disavow MLBFS's duty to act in good faith.

from the Guarantors, the Guarantors are therefore precluded from relying upon MLBFS's alleged bad faith in disposing of that collateral as the basis for either an affirmative defense or a setoff and counterclaim. While this contention is, as noted above, not without considerable logic, the court will not accept it on the basis of such scant authority.[13] MLBFS does, however, remain free to buttress this contention with greater authority and raise it anew in a motion for summary judgment.

Accordingly, MLBFS's motion to dismiss the Guarantors' setoffs and counterclaims and/or to strike their affirmative defenses will be denied insofar as it is predicated upon the theory that the Guarantors are precluded from asserting MLBFS's alleged bad faith in disposing of Plesco's collateral as either an affirmative defense or as the basis of a counterclaim.

(2) Commercial Reasonableness

Section 9–504 of the Illinois Uniform Commercial Code obligates a secured creditor who disposes of collateral after default to do so in a "commercially reasonable" manner. See Boender v. Chicago North Clubhouse Ass'n, Inc., 240 Ill.App.3d 622, 181 Ill.Dec. 134, 138, 608 N.E.2d 207, 211 (1992), appeal denied, 151 Ill.2d 561, 186 Ill.Dec. 379, 616 N.E.2d 332 (1993). The Guarantors contend that MLBFS breached its obligation to dispose of Plesco's collateral in a commercially reasonable manner. MLBFS argues that the Guarantors waived their rights under § 9–504. For the reasons discussed below, the court agrees with MLBFS.

In Illinois, the obligation to act in a commercially reasonable manner imposed by § 9–504 can be waived by language in a guaranty. FIMSA, supra, 759 F.Supp. at 1301, citing Lincoln Park Federal Sav. & Loan Ass'n v. Carrane, 192 Ill.App.3d 188, 139 Ill.Dec. 251, 254–55, 548 N.E.2d 636, 639–40 (1989).[14] In Lincoln Park, the defendant

guarantor's waiver of "demand, protest, notice of protest or notice of default, presentment of payment and diligence in the collection of [the principal's debt] or in the preservation and/or enforcement of [the principal's] security" was held to be sufficient to waive the obligation of commercial reasonableness. Id., 548 N.E.2d at 639. Here, the Guarantors waived "all diligence in collection and any failure or delay by MLBFS in protection or perfection of MLBFS's rights under the Guaranteed Documents or in or to any collateral securing any of [Plesco's] Obligations, . . . presentment, demand for payment, protest and notice of protest, default, notice of intent to accelerate maturity, notice of acceleration of maturity, nonpayment or partial payment by [Plesco], . . . and . . . any other circumstances which might constitute a defense to enforcement of [the Guaranties]." (See Compl. Exs. E–H.)

The Guarantors concede that the language of the waivers in Lincoln Park is similar to that of the waivers in the Guaranties, but nevertheless contend that Lincoln Park is inapposite because it involved a waiver of commercial reasonableness in the context of the collection of the underlying debt rather than the disposition of collateral. (See Plessas defendants' Opp'n to MLBFS's Mot. to Dismiss at 10.) As MLBFS points out, however, the court in Lincoln Park made no such distinction, but rather found a waiver "of **any** obligation to act with commercial reasonableness." Lincoln Park, 548 N.E.2d at 639 (emphasis added).

The Guarantors also rely heavily upon Walter E. Heller & Co., Inc. v. Wilkerson, 627 P.2d 773 (Colo.Ct.App.1980). There, the Colorado Court of Appeals, interpreting Illinois law, held that the defendant guarantors had not waived their rights under § 9–504 despite a provision in the relevant guaranty that allowed the creditor to pursue the guarantors directly in the event of the principal debtor's default without first proceeding

---

**13.** Moreover, *Shirman* does not, as noted above, address the applicability of the covenant of good faith and fair dealing.

**14.** A majority of federal courts as well as some other state courts also permit guarantors to waive their § 9–504 rights. *Chrysler Credit Corp.*

against the collateral.[15] *Id.* at 775. Instead, the court noted that nothing in the guaranty expressly provided for the waiver of the guarantors' rights under § 9–504 and held that although the guarantors could not compel the creditor to proceed against the collateral before seeking payment from them, once the creditor elected to do so, it was required to dispose of the collateral in a commercially reasonable manner. *Id.*

*Wilkerson* does not, however, compel a conclusion that the Guarantors did not waive their rights under § 9–504. The court is not convinced that *Wilkerson* represents an accurate statement of Illinois law regarding whether a guarantor's unconditional obligation to pay upon default irrespective of the creditor's resort to collateral waives the creditor's obligation to dispose of that collateral in a commercially reasonable manner. In *Ford Motor Credit Co. v. Devalk Lincoln–Mercury, Inc.,* 600 F.Supp. 1547 (N.D.Ill. 1985), an action by a creditor to, *inter alia,* enforce certain guaranties, the court reached the opposite result, holding that the guarantors had waived their rights under § 9–504 because the creditor was not required to proceed against the collateral before seeking payment from the guarantors. *Id.* at 1551–53; *see also Shirman, supra,* 41 F.R.D. at 371–73.

Additionally, one of the two cases upon which *Wilkerson* relied, *United States v. Willis,* 593 F.2d 247 (6th Cir.1979), involved an interpretation of federal rather than Illinois law, *see id.* at 255 n. 11, and is arguably distinguishable because the creditor in that instance was the United States. *See National Acceptance Co. of America v. Wechsler,* 489 F.Supp. 642, 648 n. 7 (N.D.Ill.1980) (noting that when the government is a secured creditor it should perhaps be held to "a high standard of conduct with respect to the man-

ner in which it disposes of collateral," but declining to follow *Willis* where private creditors were involved); *see also Morris, supra,* 79 B.R. at 781–82. The other case, *Commercial Discount Corp. v. Bayer,* 57 Ill.App.3d 295, 14 Ill.Dec. 647, 372 N.E.2d 926 (1978), is also of limited value. There, an Illinois appellate court affirmed a directed verdict for the defendant guarantors because the secured creditor's notice to the guarantors of the default sale of the collateral—required by § 9–504(3)—was not commercially reasonable. Although the court did note that "nothing in the record [indicated] that [the guarantors] waived or modified the notice requirement," *id.,* 372 N.E.2d at 929, the issue of waiver was apparently neither raised by the secured creditor nor thoroughly considered by the court. *See Wechsler, supra,* 489 F.Supp. at 648 ("Although the court in *Bayer* was not presented with a question of waiver . . . . [it] might have considered a waiver effective as to the rights of a guarantor under section 9–504(3)").

Finally, even assuming that *Wilkerson* is correct and that a guarantor's unconditional obligation to pay upon default irrespective of the creditor's resort to collateral does not waive the creditor's obligation to dispose of that collateral in a commercially reasonable manner, the court would still conclude that the Guarantors waived their rights under § 9–504. For, as noted above, in *Lincoln Park* an Illinois court analyzed waiver provisions similar to the ones at issue here and concluded that they constituted a waiver "of any obligation to act with commercial reasonableness." *Id.,* 548 N.E.2d at 639. Accordingly, the Guarantors are therefore precluded from raising MLBFS's alleged failure to dispose of Plesco's collateral in a commercially unreasonable manner as the basis of either an affirmative defense or a counterclaim.[16]

v. Curley, 753 F.Supp. 611, 613 & n. 6 (E.D.Va. 1990).

**15.** In this instance, the Guaranties contain a similar provision: MLBFS is not obligated "to pursue or exhaust any rights or remedies against Principal or others, or resort to any security, prepayments or collateral, as a prerequisite to enforcing" the Guaranties. (*See* Compl. Exs. E–H.)

**16.** As discussed above, the Guarantors have not, however, waived their right to assert MLBFS's alleged bad faith in the disposition of Plesco's collateral as the basis of either an affirmative defense or a counterclaim. *See Morris v. Columbia National Bank of Chicago,* 79 B.R. 777, 782 n. 4 (N.D.Ill.1987) (drawing distinction between waiver of good faith and question of commercial reasonableness).

830

(3) The Plessas–Plesco Note

In addition to the setoff and counterclaim collectively asserted by all the Plessas defendants, James Plessas has individually asserted a setoff and counterclaim seeking damages from MLBFS in the amount allegedly due him under the Plessas–Plesco Note. He contends that because the Plessas–Plesco Note was secured by liens on Plesco's assets, MLBFS's allegedly improper liquidation of Plesco's inventory and collection of Plesco's accounts receivable completely destroyed his secured interest in Plesco's assets. He claims that, as a junior secured creditor, he has a statutory right pursuant to U.C.C. § 9–507 to assert a setoff and counterclaim against MLBFS based upon MLBFS's commercially unreasonable disposition of Plesco's collateral. (*See* Plessas defendants' Opp'n to MLBFS's Mot. to Dismiss at 15.) MLBFS offers the court two reasons why Plessas cannot maintain a counterclaim against MLBFS on the Plessas–Plesco Note. Both have considerable merit.

First, by the terms of the guaranty he executed, Plessas assigned his security interest in Plesco's collateral to MLBFS. Specifically, his guaranty provides:

> [A]s further security to MLBFS any and all debts or liabilities now or hereafter owing to [Plessas] by [Plesco] and/or by such other person or concern, and any lien, security or collateral given to [Plessas] in connection therewith, are hereby subordinated to the claims and liens of, **and assigned to,** MLBFS.

(*See* Compl. Ex. G) (emphasis added). Plessas offers the court no guidance as to why this assignment should not preclude his counterclaim based on the Plessas–Plesco Note.

And second, even if Plessas' assignment of his security interest in Plesco's collateral were somehow invalid or perhaps immaterial, his theory of recovery under U.C.C. § 9–507 (assuming it applies) is, by Plessas' own admission, grounded upon MLBFS's commercially unreasonable disposition of Plesco's collateral. (*See* Plessas defendants' Opp'n to MLBFS's Mot. to Dismiss at 15.) The court has, however, already concluded that Plessas waived MLBFS's obligation to dispose of Plesco's collateral in a commercially reasonable manner. Accordingly, his counterclaim on the Plessas–Plesco Note must fail and will be dismissed.

## CONCLUSION

For the reasons discussed above the court will: (1) grant MLBFS leave to file its amended complaint; (2) dismiss James Plessas' individual counterclaim on the Plessas–Plesco Note; (3) grant MLBFS's motions to dismiss or strike the Guarantors' affirmative defenses and setoffs and counterclaims insofar as MLBFS seeks to preclude the Guarantors from asserting MLBFS's allegedly commercially unreasonable disposition of Plesco's collateral; and (4) deny MLBFS's motions to dismiss or strike the Guarantors' affirmative defenses and setoffs and counterclaims insofar as MLBFS seeks to preclude the Guarantors from asserting MLBFS's alleged bad faith in the disposition of Plesco's collateral.